# EXHIBIT 1

ATTORNEY GENERAL OF MISSOURI
CATHERINE L. HANAWAY

September 16, 2026

TO:
QCX Limited Liability Company ("Polymarket")
Corporation Service Company, Registered Agent
251 Little Falls Drive
Wilmington, DE 19808

**RE: <u>Unlicensed Sport Wagering Operations in Missouri</u>**

To Whom It May Concern:

Polymarket is an online sports wagering platform offering sports wagering to individuals located in the State of Missouri, despite not submitting to regulation by the Missouri Gaming Commission as required by Missouri law. At this time, Polymarket has two options: (1) it must cease and desist from such activity; or (2) it must (a) obtain a license from the Missouri Gaming Commission, (b) pay all associated state taxes and fees, and (c) stop offering sports wagering to persons in the State of Missouri under the age of 21. If Polymarket persists in violating Missouri law, the State of Missouri will pursue available enforcement actions against Polymarket.

Like many states, Missouri regulates sports betting. In December 2024, Missourians determined that the public interest would be "best served by a well-regulated sports wagering industry that will provide substantial tax revenue to support educational institutions in Missouri." Mo. Const. art. III, § 39(g)1. Since then, entities like Polymarket—*i.e.*, ones that operate online sports wagering platforms through which individuals located in the State of Missouri wager on professional and collegiate athletic, sporting, and other competitive events—have been required to obtain a license from the Missouri Gaming Commission. This licensing requirement for online sports wagering platforms is not optional and applies to Polymarket. Thus, by offering sports wagering in Missouri without a license, Polymarket has been—and continues to be—in violation of Missouri law.

Polymarket's failure to comply with Missouri law also includes its failure to pay state taxes and fees. Missouri imposes a wagering tax of 10% on "the adjusted

gross revenue" from all in-state sports wagering. Mo. Const. art. III, § 39(g)10.a. Missouri also requires online sports wagering platforms to pay an initial license fee, as well as a renewal fee every five years, each of which could be as much as $500,000. Mo. Const. art. III, § 39(g)6. These taxes and fees are appropriated to "institutions of elementary, secondary, and higher education" in Missouri and to a Compulsive Gaming Prevention Fund designed to mitigate the social ills associated with sports wagering. Mo. Const. art. III, § 39(g)15. Polymarket, of course, has made money from sports wagers placed by individuals located in the State of Missouri. Yet Polymarket has kept all of that money for itself and disregarded its obligation to pay a portion to the State for the benefit of Missourians. Unless and until Polymarket fulfills that obligation, it will not be permitted to offer the use of its online sports wagering platform in Missouri.

Polymarket is in further violation of Missouri's prohibition against sports wagering by anyone under the age of 21. 11 C.S.R. § 45-20.360(1)(A). Indeed, although Missouri imposes an "*affirmative duty*" on online sports wagering platforms to "*actively prevent* the placement of a wager by individuals under twenty-one (21) years of age," *id.* at § 45-20.360(6) (emphasis added), Polymarket's US Rulebook permits anyone who is at least 18 years of age and has "attained the age of majority in their state and/or country of residence"—which in Missouri is 18—to place wagers through its online sports wagering platform. To be clear, regardless of what Polymarket's Rulebook may permit, Polymarket has no authority to allow sports wagering by persons in Missouri under the age of 21, and doing so will not be tolerated.

Missouri is aware that Polymarket has sought to avoid complying with similar sports gambling laws of other states by claiming that it offers "event contracts"—or so-called "swaps"—governed by the Commodity Exchange Act (CEA) and subject to exclusive regulation by the Commodity Futures Trading Commission. Missouri, however, shares the same view as the majority of federal courts, which have ruled that online sports wagering platforms like the one offered by Polymarket are subject to state gambling laws, both because the CEA does not preempt state law in this area and because sports betting "event contracts" do not qualify as "swaps" under the CEA. *See e.g., KalshiEx, LLC v. Assad*, 2026 WL 2543846 (9th Cir. Aug. 28, 2026); *KalshiEx LLC v. Schuler*, 2026 WL 1295806 (6th Cir. Apr. 24, 2026); *KalshiEx LLC v. Bird*, 2026 WL 2691009 (S.D. Iowa Sept. 8, 2026); *KalshiEx LLC v. Cafferelli*, 2026 WL 2294589 (D. Conn. Aug. 10, 2026); *KalshiEx LLC v. Cox*, 2026 WL 2241564 (D. Utah Aug. 4, 2026); *KalshiEx LLC v. Williams*, 2026 WL 2017466 (S.D.N.Y. July 13, 2026); *N. Am. Derivatives Exch. v. Nevada*, 815 F.Supp.3d 1169, 1175 (D. Nev. 2025); *KalshiEx LLC v. Martin*, 793 F. Supp. 3d 667 (D. Md. 2025).

* * *

Missouri expects all online sports wagering platforms to comply with Missouri's sports betting laws, and Polymarket is no exception. While Missouri remains open to possible legislative reforms in the future, the only immediate solutions available to Polymarket are to bring its operations into compliance with Missouri law or to stop offering its online sports wagering platform to individuals located in the State of Missouri. Otherwise, the State of Missouri will take legal action against Polymarket.

We ask that you confirm Polymarket's compliance with Missouri law or its cessation of sports wagering activities in the State of Missouri within thirty days of the date of this letter.

Sincerely,

**CATHERINE L. HANAWAY**
ATTORNEY GENERAL

*/s/ Louis J. Capozzi, III*
LOUIS J. CAPOZZI, III
SOLICITOR GENERAL
JUSTIN M. LADENDORF
DEPUTY SOLICITOR GENERAL
Missouri Attorney General's Office
815 Olive Street, Suite 200
St. Louis, MO 63188
573-645-9662
Louis.Capozzi@ago.mo.gov
Justin.Ladendorf@ago.mo.gov